Filing # 33896098 E-Filed 10/30/2015 02:42:34 PM

IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT
IN AND FOR DUVAL COUNTY, FLORIDA
CIVIL DIVISION

JENNIFER MATHIAS, as Personal
Representative of the Estate of
JEFFREY MATHIAS, deceased,

        Plaintiff,

vs.                            Case No.

SEA STAR LINE, LLC, a foreign
corporation, d/b/a TOTE MARITIME
and TOTE MARITIME PUERTO RICO,
and TOTE SERVICES, INC., a foreign
corporation,

        Defendants.
_____/

## COMPLAINT

JENNIFER MATHIAS, as Personal Representative of the Estate of JEFFREY MATHIAS, deceased, sues SEA STAR LINE, LLC d/b/a TOTE MARITIME and TOTE MARITIME PUERTO RICO (collectively "Sea Star Lines"), and TOTE SERVICES, INC. ("Tote Services") and alleges upon information and belief:

1.     This is an action for wrongful death pursuant to the Jones Act, 46 U.S.C. § 31401, the Death on the High Seas Act, 46 U.S.C. § 30301 *et seq.*, and the general maritime law of the United States for damages in excess of $15,000.00, exclusive of interest and costs.

2.     At all times material hereto, Jennifer Mathias is the personal representative of the Estate of Jeffrey Mathias.

3.     At all times material hereto, Jennifer Mathias is a resident of the State of Massachusetts, and is the surviving spouse and widow of Jeffrey Mathias.

4.     Jeffrey Mathias is also survived by his three dependent minor children, Hayden Mathias, Heidi Mathias and Caleb Mathias.

5.     This action is brought for the exclusive benefit of Jeffrey Mathias' spouse and children.

6.     At all times material hereto, Sea Star Line, LLC was a Delaware Limited Liability Company, authorized to do business in the State of Florida, with a principal place of business in Jacksonville, Duval County, Florida.

7.     Sea Star Lines, LLC is the owner of the Florida fictitious names Tote Maritime and Tote Maritime Puerto Rico and does business under said fictitious names.

8.     At all times material hereto, Tote Services, Inc. was a Delaware corporation authorized to do business in Florida, with a principal place of business in Jacksonville, Duval County, Florida.

9.     At all times material hereto, Sea Star Line, LLC, was the owner of the SS EL FARO, a vessel documented under the laws of the United States, with Official Number 561732.

10.     The SS EL FARO was a combination roll on roll off and container cargo ship that was built in 1975 and used in the transportation of goods for hire in the coastwise trade between Jacksonville, Florida, and San Juan, Puerto Rico.

11.     Upon information and belief, Tote Services, Inc. was the operator and manager of the SS EL FARO and employer of the crew aboard the Vessel.

12.     At all times material hereto, Jeffrey Mathias was a professional mariner who was licensed by the United States Coast Guard as a Chief Engineer.

13.     Jeffrey Mathias was employed by Tote Services, Inc. as a chief engineer and crewmember aboard the SS EL FARO. Alternatively, Jeffrey Mathias was employed by Sea Star Lines, LLC.

14.     The SS EL FARO was scheduled to depart Jacksonville, Florida on or about September 29, 2015 en route to San Juan, Puerto Rico.

15.     Prior to departing Jacksonville, the vessel was in a poor material condition subject to leaks and numerous deferred items of maintenance including, but not limited to, required repairs to its boilers.

16.     Prior to departing Jacksonville, the vessel and its owners had knowledge of Tropical Storm and Hurricane warnings associated with a strengthening Tropical Storm Joaquin, which was forecast to be a hurricane along the intended track of the vessel.

17.     The SS EL FARO departed Jacksonville, Florida in the evening of September 29, 2015, loaded with cargo and with 33 crewmembers aboard.

18.     As the vessel proceeded to San Juan, Puerto Rico, the National Hurricane Center broadcast regular updates and warnings that Tropical Storm Joaquin had become a hurricane and was forecast to become a major hurricane along the vessel's track.

19.     At all times material hereto, the vessel and its owners, operators, and managers, knew or should have known of the current location and strength, and the forecast location and strength, of Hurricane Joaquin.

20.     At all times material hereto, the owners, operators and managers were in contact with or had opportunity to be in contact with the vessel and maintain constant data regarding the position of the SS EL FARO and her course.

21.     Despite the warnings, the vessel set a course to pass dangerously close to the eye of the major hurricane with the full knowledge and acquiescence of the vessel's owners, operators and managers.

22.     At 0200 Eastern on October 1, 2015, Hurricane Joaquin had maximum sustained winds of 120 miles per hour and was moving southwest at 6 miles per hour, and additional strengthening was forecast. The storm track was not forecast to change until that night or the next day.

23.     During the early morning hours of October 1, 2015, the SS EL FARO lost propulsion, sustained a breach in its hull, a blown scuttle, and it was taking water into hold 3 resulting in a 15 degree list.

24.     The SS EL FARO communicated with its owners, operator or managers and reported a marine emergency at 0700 on October 1, 2015, when the vessel was without propulsion and drifting into the storm's path.

25.     Despite the marine emergency and perilous condition of the Vessel, Tote failed to contact the United States Coast Guard and inform it of the SS EL FARO's emergency.

26.     At 0717, the United States Coast Guard received electronic distress signals from three separate sources on the EL FARO, each of which were manually activated. At the time, the SS EL FARO was approximately 20nm away from the eye of Hurricane Joaquin.

27.     The SS EL FARO sank in international waters greater than three nautical miles from the shore of the United States, and the vessel has not been located.

28.     Jeffrey Mathias and the 32 other crewmen aboard the vessel died as a result of the sinking of the SS EL FARO.

## COUNT I - JONES ACT NEGLIGENCE

29.     Plaintiff realleges and reavers paragraphs 1 through 28 as if fully stated herein.

30.     This count is brought pursuant to the Jones Act, 46 U.S.C. §30104, and the Death on the High Seas Act, 46 U.S.C. § 30301 *et seq.*

31.     Defendants Sea Star Lines, LLC and/or Tote Services, Inc., as Jeffrey Mathias' employer, had an absolute and non-delegable duty to provide Jeffrey Mathias with a reasonably safe place to work and a duty to exercise ordinary care under the circumstances, including, but not limited to, a duty to exercise reasonable care for the safety of the SS EL FARO's crew.

32.     That Defendants Sea Star Lines, LLC and/or Tote Services, Inc. breached its duties to Jeffrey Mathias, in that:

(a)     It knew or should have known that the SS EL FARO was not in a material condition to withstand the seas and weather conditions it was reasonably expected to encounter along the vessel's track;

(b)     It knew the Vessel's planned track took the vessel dangerously close to the forecast position of the eye of a major hurricane with no sea room to allow for storm avoidance and failed to direct its Master to safely avoid the storm;

(c)     It knew or should have known that the open life boats aboard the vessel were incapable of being launched in hurricane or near hurricane conditions; and

(d)     It is vicariously liable for the negligence of the Vessel's Master for navigating the Vessel to pass dangerously close to the eye of a major hurricane, a decision that was made with the privity and knowledge of Sea Star and/or Tote Services.

(e)     It knew or should have known that the SS EL FARO had potential propulsion problems prior to allowing the vessel to sail into the area of a known hurricane.

33.     That the breach of the aforesaid duties caused the sinking of the SS EL FARO and the death of Jeffrey Mathias.

34.     That as a result of Defendants Sea Star Lines, LLC and Tote Services, Inc.'s breach of the aforesaid duties, Jeffrey Mathias' Estate and dependent spouse and minor children have sustained, and will sustain in the future, loss of support, loss of services, loss of nurture, guidance, care and instruction, and loss of inheritance and any other damages allowable by law.

WHEREFORE, Plaintiff demands that judgment be entered in her favor and against Defendants Sea Star Lines, LLC and/or Tote Services, Inc., for any and all damages, pre-judgment interest, and costs, plus any other and further relief this Court deems just in the premises.

## COUNT II - JONES ACT SURVIVAL ACTION

35.     Plaintiff realleges and reavers paragraphs 1 through 28, and 30 through 32 as if fully stated herein.

36.     That Jeffrey Mathias and other crewmembers aboard the SS EL FARO were left at the mercy of the storm as the vessel drifted without propulsion into Hurricane Joaquin while taking on water and listing.

37.     That in view of the impending danger, Jeffrey Mathias and other crewmembers were consciously aware of the danger of the Vessel foundering near the eye of the major hurricane and at least one crewmember donned an emergency survival suit.

38.     That Jeffrey Mathias and other crewmembers aboard the SS EL FARO were consciously aware of their pending fate before, during, and/or after the sinking of the Vessel.

39.     That Defendants Sea Star Lines, LLC and/or Tote Services, Inc. breached the aforesaid duties causing Jeffrey Mathias conscious pain and suffering, emotional distress and mental anguish prior to his death.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendants Sea Star Lines, LLC and/or Tote Services, Inc., for any and all damages, pre-judgment interest, and costs, plus any other and further relief this Court deems just in the premises.

## COUNT III - UNSEAWORTHINESS

40.     Plaintiff realleges and reavers paragraphs 1 through 28 as if fully stated herein.

41.     That this count is brought pursuant to the general maritime law and the Death on the High Seas Act, 46 U.S.C. § 30301 *et seq.*

42.     That Defendant, Sea Star Line, LLC and Tote Services, Inc. owed Jeffrey Mathias an absolute and non-delegable duty to provide a seaworthy vessel that was reasonably fit for its intended purpose.

43.     That the SS EL FARO was not seaworthy because:

(a)     It was lost under conditions that it should reasonably have been expected to overcome;

(b)     Its propulsion system failed under normal use;

(c)     Its hull was breached, and a scuttle opened under normal use;

(d)     The crew did not have a way to escape from the stricken vessel once beset by the storm; and

(e)     Its lifeboats were inadequate.

44. The unseaworthy conditions of the SS EL FARO and its equipment, apparel and appurtenances proximately caused the sinking of the SS EL FARO and the death of Jeffrey Mathias.

45. That as a result of Defendant Sea Star Line, LLC and Tote Services, Inc.'s breach of the aforesaid duties, Jeffrey Mathias' Estate and dependent spouse and minor children have sustained, and will sustain in the future, loss of support, loss of services, loss of nurture, guidance, care and instruction, and loss of inheritance and any other damages allowable by law.

WHEREFORE Plaintiff demands judgment in her favor and against Defendants Tote Services, Inc. and Sea Star Line, LLC for any and all damages, pre-judgment interest, and costs, plus any other and further relief this Court deems just in the premises.

## DEMAND FOR JURY TRIAL

46. Plaintiff demands trial by jury on all issues so triable.

/s/ Allen von Spiegelfeld
Allen von Spiegelfeld - FBN 256803
Eric C. Thiel – FBN 016267
BANKER LOPEZ GASSLER P.A.
501 E. Kennedy Boulevard, Suite 1500
Tampa, Florida 33602
Telephone: (813) 221-1500
Facsimile: (813) 222-3066
Email: service-avonsp@bankerlopez.com
service-ethiel@bankerlopez.com

Attorneys for Plaintiff